After you get settled in, gentlemen, if you'd step to the podium and inform us who you are and who you represent. And if you do that, together, starting at the epilogue, counsel at the epilogue. Good morning, Your Honor. We'd appreciate that. James Kaloyanis for Appellant Executive Risk Indemnity. And for Appellee. And good morning, Your Honors. My name is Tom Patterson. I represent Drs. Jeffrey Yessenow and Dr. Vijay Patel. We are the Appellees. All right. Each side has 15 minutes. I can assure you we've read the briefs. Hopefully you picked up on that from our questioning of the prior people. We don't look at our watches, though. On the other side, you've got about 40 minutes. So as long as you're making it interesting and not repeating yourselves, we'll keep asking you questions. It's a fair trade. But don't go to your strongest points first. We're not a jury. Any time you're ready, Mr. Kaloyanis. May it please the Court, counsel. Again, Your Honor, for the record, my name is James Kaloyanis, and I represent the Appellant Executive Risk Indemnity, Inc. I'd like to reserve five minutes for rebuttal, if I may. Certainly. As the briefs explain, Executive Risk issued a Director's and Officer's Liability Policy to an entity named iHealthcare, an Indiana corporation located in Munster, Indiana, a now bankrupt entity. Plaintiffs, Drs. Yessenow and Patel, served on the Board of Directors of that entity. That entity ultimately went into bankruptcy in 2007, originally as an involuntary Chapter 7, converted to a Chapter 11, followed by a subsidiary, Heartland Memorial Hospital, which in the brief we referred to as Heartland, and iHealthcare being the parent entity there that went into bankruptcy first. In 2008, the Bankruptcy Court in Indiana confirmed the plan, the liquidating reorganization plan for iHealthcare, appointing David Abrams as the court-appointed manager, liquidating trustee and, importantly, court-appointed manager of Heartland. Did Mr. Abrams have any prior connection to this corporation? Not that I'm aware of, Your Honor. I believe he was simply appointed by the Bankruptcy Court as liquidating trustee and court-appointed manager, which became official upon the confirmation of the plan by the Bankruptcy Court in Indiana. In 2009, Mr. Abrams, as liquidating trustee and court-appointed manager of Heartland, filed an action against several individuals, including Drs. Yesenow and Patel. Again, in the briefs we referred to that as the Abrams 1 action, and that's distinguished from there were five actions before the Circuit Court underlying that the Court considered the only one in which the Court granted plaintiff's motion for partial or summary judgment, which is before this Court, is the Abrams 1 action. In Abrams 1, Mr. Abrams, the liquidating trustee, amended his complaint in October 2009 and, as in the original complaint, included counts of mismanagement and breaches of fiduciary duty against the defendants, and those defendants included Drs. Yesenow and Patel. As Executive Risk argued before the trial court, two exclusions in the Executive Risk policy unambiguously exclude coverage for the underlying Abrams 1 action. The bankruptcy exclusion, as it's referred to in the policy, and an exclusion that's commonly referred to as the insured versus insured exclusion, a common DNO, Directors and Officers, policy exclusion. With respect to the bankruptcy exclusion, neither the plaintiffs nor the trial court challenged the application of the exclusion to the facts presented. Instead, the trial court accepted plaintiff's argument that a section of the bankruptcy code, Section 541C, prohibited the application of that exclusion to the present circumstances. There's an additional section that plaintiffs argued applied as well, the bankruptcy code, Section 365, which the trial court did not address, but I will during this argument. What the trial court did was hold Section 541 prevented the application of the exclusion because it rendered, according to the trial court, the policy useless. The second exclusion, the insured versus insured exclusion, the trial court looked at that exclusion and found it ambiguous. And as Executive Risk argued in its brief and before the trial court, as the plain and ordinary language of that exclusion on its face applies to these circumstances. What the trial court did, according to its orders, found that the law as to this exclusion was unsettled. And by designating the law as unsettled, found an automatic ambiguity, which, as Executive Risk pointed out in its brief, is against Indiana law, which we've made an argument that choice of law here should be the application of Indiana law. The insureds here, iHealthcare and all the individuals who are Indiana residents, the policy was issued during the Indiana broke. But does it really matter? As he also pointed out, I believe that there's a reason to believe that Illinois law would treat this any differently. Possibly not, Your Honor. The one example that we found where Indiana law addressed the question specifically, but I would argue that Illinois would follow the same path, was there's a case on point with respect to conflicting case law does not create an automatic ambiguity. Again, I believe if you follow Illinois law insurance principles, the same outcome should be found. Beginning with the bankruptcy exclusion, again, on its face, plaintiffs do not challenge that the exclusion applies to preclude coverage. The exclusion requires that in the event of the bankruptcy, there would be no coverage for any claim, no coverage would be available under the policy for any claim brought by or on behalf of a trustee, examiner, receiver, liquidator, et cetera. And there's no argument that Mr. Abrams doesn't fall at least within one of those categories and the exclusion applies to bar coverage. The trial court accepted plaintiff's argument that Section 541C of the Bankruptcy Code prohibits the application of the bankruptcy exclusion to preclude coverage for the Abrams 1 action. And there are several reasons, as Executive Risk pointed out in his briefs, that that provision does not apply here. And first and foremost, and this argument also applies with respect to Section 365 of the Bankruptcy Code, plaintiffs, as non-debtors, do not have the right to use the Bankruptcy Code to seek to prohibit the application of the bankruptcy exclusion here. The Bankruptcy Code specifically describes or defines debtors as either the municipality or the person that filed the bankruptcy. That certainly is not plaintiffs here. And there are no provisions of the Bankruptcy Code that provide standing for non-debtors, third parties such as plaintiffs here, to claim exemptions in the property of the state, as they're attempting to do here, by seeking to rely on Section 541C to essentially remove or delete an unambiguous exclusion from the policy. Second, plaintiffs filed to cite a single case from any jurisdiction that holds, holding that an insurance policy like this one, like the one here, is subject to 541C. And the plain language of 541C, if you review it, it applies to the interest of the property of the estate. Here, there's no argument that anything, the application of the bankruptcy exclusion here to the Abrams 1 action would affect the property interest of the estate of the debtor. While it does have a preclusive effect on the coverage available for these individual plaintiffs with respect to the underlying Abrams 1 action, and therefore the proceeds of the policies could not be used by virtue of the exclusion with respect to that underlying Abrams 1 case, it does not affect the property of the estate itself, the debtor. The debtor does not have an interest here. It's simply the two plaintiffs, the non-debtors, that are seeking coverage under the policy. But under no circumstances is it conceivable that debtors would be able to get the money, assuming that we held, as the trial court did, that the policies do protect the plaintiff's debtors, that the debtors wouldn't get that? It's conceivable, Your Honor, and it's just simply not the circumstances presented here. There's a long line of authority with respect to the application of the bankruptcy code, specifically as to directors and officers' policies, and the treatment of the proceeds of the policies, which the plaintiffs here seek with respect to the defense of the underlying Abrams 1 action, and the policy itself, which is the property, I put highlighted or air quotes there, the property of the estate, the debtor, iHealthcare. Again, two different principles, but if this was the circumstance, again, there is no claim being made by the debtor as to its rights to this policy. It's the plaintiffs, the non-debtors, that are seeking a defense under the policy, and that is with respect to the proceeds of the policy, as distinguished from the property. The policy itself, I'm sorry, which is the property of the estate, again, is a long line of authority, citing an executive risk briefs make that distinguishment. And finally, as to the application of 541C, it appeared what the trial court did is accept the proposition that if this exclusion applies, that it would render the policy useless. And the trial court, apparently, based on its order, found that by rendering the policy useless, the exclusion cannot be upheld. Otherwise, it would be violative of Section 541C and, again, render the policy useless. Far from being the case that the exclusion renders the policy useless, it does apply here to prohibit on its face coverage for the underlying actions filed against Dr. Jesno and Patel, very specifically and expressly. But their coverage remained under the policy. In fact, the policy itself addresses, when the entity itself goes into bankruptcy, that the policy will continue to enforce pursuant to its terms. And to point out, as we did in our briefs, this exclusion wasn't something that was added to the policy upon bankruptcy. It was there when the debtor, what became the debtor, iHealthcare, purchased the policy. Coverage remained under the policy after the involuntary bankruptcy, after conversion to Chapter 11, after the confirmation and liquidating plan of organization. It didn't remain for, it did not exist for this underlying Abrams 1 claim. But if there's employment claims against the entity, if there's other claims against the entity that would otherwise be covered under what is a relatively broad directors and officers liability policy that permits entity coverage, nothing within the bankruptcy exclusion would prohibit coverage for those claims. And therefore, contrary to the trial court's conclusion, the addition of the bankruptcy exclusion to the policy did not render the policy useless. The second bankruptcy code provision that plaintiffs argued prevented the application of the bankruptcy exclusion to the Abrams 1 action was Section 365E1 of the Bankruptcy Code. The trial court didn't specifically address this exclusion, leaving its finding as just of Section 541. As pointed out in the executor's brief, the exclusion doesn't apply for two or more reasons, but the two primary ones being, one, again, plaintiffs as non-debtors do not have a right to seek to undo the bankruptcy exclusion based on Section 365. That's a relief specifically limited pursuant to 365 terms to the debtor. Equally important, 365 specifically only applies to executory contracts. And there's a debate in the briefs regarding whether this is an executory contract or not. And as set forth in executor's briefs, the vast majority of case law, including the Seventh Circuit, and we've cited primarily federal case law in this respect because it's typically what is addressing the construct or constructing the interpreting and interpreting the bankruptcy code. The Seventh Circuit, along with the Delaware Bankruptcy Court, in the country, follows what's known as the countrymen approach to whether something is an executory contract and not countrymen, referring to a Minnesota Law Review article. Applying the countrymen definition of executory contract, the Delaware Bankruptcy Court in the federal mobile case specifically held that where the policy premiums are paid prior to the bankruptcy, that policy is no longer an executory contract. There is no dispute here that the policy premiums were paid prior to the companies here entering into bankruptcy. And under the countrymen definition as defined or applied by the Seventh Circuit and Delaware Bankruptcy Court, because the policy premiums were paid, because this was not an executory contract, Section 365 cannot be applied here. The completely separate exclusion that the trial court addressed in the plaintiff, that Executive Brist argued applied to preclude coverage from the underlying case, is again what's commonly referred to as the insured versus insured exclusion. And on its face, the language of it suggests, the language of the exclusion itself expresses how broadly it applies. And I'll read it. It says the policy does not apply to any claim by or on behalf of or in the name or right of the company or any insured person. And I stress that clause of it's not only a claim brought by the company or insured person, which is how the trial court interpreted it and how the plaintiffs seek to have this court interpret it. But it's a claim brought by or on behalf of or in the name or right of the company or any insured person. There's no dispute here as to how the definitions in the policy apply to these circumstances. Company, as defined by the policy, includes the parent organization, that would be iHealthcare here, or any subsidiary, which would include Heartland, Heartland Memorial Hospital. There's also no dispute that insured persons here include Dr. Jessenow and Patel, and arguably Mr. Abrams as well, as a member manager of the company. What the trial court did essentially by finding that the exclusion did not apply was remove from the exclusion that broad prefatory language regarding to whom it should apply and on behalf of whom claims could be brought. Again, by or on behalf of or in the name or right of the company or an insured person. Executivist has cited throughout its briefs the underlying record attached to the motions, which are replete with examples of the responsibilities given to Mr. Abrams as the liquidating trustee and court appointed manager of the debtor. He has the obligations and responsibilities to pursue causes of action like this. He's pursuing these causes of action against the defendants in Abrams 1 for financial mismanagement and breaches of fiduciary duties in their roles as directors and officers of the company. Again, to stress, not just the liquidating trustee, but the court appointed manager of the debtor. We're putting aside case law for the moment. Simply on its face, the court appointed manager of the company and an exclusion that prevents coverage for any claim brought by or on behalf of or in the name or right of the company. Without even going into the case law, on its face, the exclusion applies to bar coverage for the Abrams 1 action. What's the principle, though, behind the insured versus insured exclusion? Go ahead. Why does it exist? There's several reasons, Your Honor. One is that there shouldn't be coverage when a – arguably shouldn't be coverage,  it's not meant – the policy is not meant to act as a benefit to the company itself, which is also an insured. And that there is a risk of collusiveness there. Some policyholders should argue that collusiveness actually has to exist for the exclusion to apply. That argument has been rejected by a number of courts, including Judge Posner in the Seventh Circuit has suggested – has rejected the argument because it's found nowhere in the policy that there is that collusive requirement there. Instead, on its face, as I've read several times, the exclusion is broadly written so that it not only applies to the company or an insured person bringing these claims, but any claim brought by or on behalf of or in the name or right of either of those, the company or the insured person. And it seems almost impossible to argue that the liquidating trustee and court-appointed manager, an example not found in any of the cases that even executive versus cited, in support of the proposition that even if Mr. Abrams is just a liquidating trustee, that the exclusion would apply. But certainly as a court-appointed manager of the debtor, it seems – again, I stress it seems almost impossible to argue that it's not a claim brought by or on behalf of or in the name or right of the company. As Executive Risk pointed out in his brief, every federal circuit court to consider this issue has ruled in a way that's favorable to Executive Risk. When you say every, restricting yourself to published cases, which we can consider, it's a non-published which we are by law only required to not consider. What, two district courts and one Seventh Circuit or one district court and one Seventh Circuit? It's two district courts, Your Honor, but both, even though it's – they're affirmed on appeal. There might not be an opinion there. And I've read Your Honor's recent opinion regarding the use of unpublished courts. I rewrote Rule 23 eight years ago, and they've chose, they've looked at it, and they've rejected everything I've suggested for eight years. So I believe we should be able to cite those, because otherwise there's nothing to cite. And they came out with it six months ago, four months ago. They amended it in exactly the way we asked them not to amend it. So they – I've been wrote hard and hung up wet by the Supreme Court. They don't like it. And the opinion caught my attention. That's why I noted it. I'm not mad about it. I mean, you have to do it, frankly, so I don't complain. But I can't cite it. If I put in my opinion, then I get a call. And considering the cases we've cited, Your Honor, the appellate court cases, I'm not quite sure, actually, how to not cite an unpublished opinion when it reflects the appellate court affirming the district court opinion. That is not an unpublished fact. It may be affirmed without opinion, but in fact, the record would reflect that two district courts found that the exclusion should apply as executive risk argues it should, in both the 8th and the 11th Circuit, affirm those opinions. But I understand your point. Yeah, again, what they need to do, frankly, I think, is to publish those things. Because the reason you don't publish them back in the 70s when we changed rules, actually around 1990 in our Supreme Court, that's too much paper. It was costing us too much to buy law books. Well, it doesn't cost anything now. It costs almost nothing now to buy the electronic version. So the reason behind that is gone, and yet nobody's changed it. And I'm a student of reading Rule 23 orders regardless of whether they apply, because I think it provides an insight into the Court's thinking as well. Fortunately for executive risk, the most recent case to address at the appellate court level, the insured versus insured exclusion, is a published case out of the 9th Circuit, and that's the Gilmore Associates v. Twin City Fire case, which we discussed at length in our briefs, and quote at length in our briefs, because while I'm sometimes hesitant to supply the Court with black quotes from briefs or from other courts' rulings, in this instance, the language is so compelling, I felt compelled to put it in there, where it states that for the purposes of the insured versus insured exclusion, the pre-filing company and the company as debtor in possession in Chapter 11 are the same entity. And while the circumstances there were not identical to the ones here, certainly a company as a debtor in possession is arguably considered less of the company, if that's a way to phrase that, than the liquidating trustee and court-appointed manager of the debtor, Mr. Abrams, pursuing his claims against Dr. Jesno and Patel. In the 9th Circuit specifically rejected, the arguments made by plaintiffs here that while these claims may benefit the creditors, that's not a reason not to apply the plain language of the policy to an individual pursuing a claim against these directors and officers that is strictly prohibited by the language of the policy itself. And the last point I'll make, Your Honors, as to the insured versus insured exclusion is simply the one I prefaced at the beginning of the argument regarding what the trial court appeared to do here was look to the unsettled, arguably unsettled nature of the law addressing the insured versus insured exclusion and find some sort of automatic ambiguity, and therefore finding that automatic ambiguity rejected the application of the insured versus insured exclusion. I would argue that Illinois would reject such a finding, an automatic ambiguity based on conflicting case law, because it would support the proposition that one rogue court could then create ambiguity in a contract after that fact, but certainly Indiana law specifically rejected that proposition. Going back to Biltmore though, in Biltmore it was somewhat different, was it not, where there was actually a lawsuit pending before the debtor became the debtor in possession. There was a lawsuit among themselves, was there not? Unlike here, here the suit is by Abrams, a court-appointed trustee, a bankruptcy trustee, liquidating manager, a court-appointed manager. There, there was already a suit pending before they needed to have a debtor in possession, is that right? That is correct, Your Honor, although I think that factual difference does not make a difference with respect to the application of the exclusion. The court there considered the application of the exclusion to the entity, the case, and it found it did. Again, rejecting the argument that the debtor in possession does not represent the shareholders of the entity, it simply represents the creditors of the entity. And I would argue again that it is even more compelling in this case. While certain arguments can be made as to what the duties of the debtor in possession are, the Ninth Circuit finding that they also represent the shareholders in that instance, here the records again replete with examples of what the responsibilities of Mr. Abrams are. And his title alone compels a finding that the insured exclusion applies. He is not simply the liquidating trustee of iHealthcare, or Heartland, excuse me. He is the court-appointed manager of the debtor. He has a responsibility to pursue the causes of action for breach of fiduciary duty and financial mismanagement that he is pursuing in Abrams 1. And on its face, the insured exclusion bars covered for that action. Based on that, we would ask this Court to reverse the trial court's ruling. Thank you. Mr. Patterson. Good morning again, Counsel, and may it please the Court. For the record, I'm Tom Patterson representing Drs. Yesenow and Patel. They are each about 60 years old. They've practiced for 30, 35 years in northwest Indiana. They were involved in Ileana Surgery Medical Center, a physician-owned hospital. In October of 2005, they were acquired by a group called Wright Capital Partners, and it was a complex series of transactions. And ultimately, Wright Capital Partners was ousted, and that left the entities bankrupt and about a dozen lawsuits in a variety of different locations as a result. Dr. Yesenow himself, to provide some context, has been required to pay over a million dollars on a letter of credit he posted as part of the transaction. He's got a suit pending for indemnity on it. The trustee has filed a case against Collins Law Firm that's pending, I believe, before Judge Bartkowitz now. They also have a case in Indiana that they are pursuing against an insurance company relating to some computer software failures. And he's also filed this case against about a dozen directors and officers of the two entities. Opposing counsel is correct that the two exclusions at issue are the bankruptcy exclusion and the insured versus insured exclusion. But I believe that counsel has misstated either the law or the trial court's opinion. Judge Riley did grant our motion for summary judgment, denied the summary judgment motion of our opponents. He did so in what I believe and assert was a well-reasoned opinion. He did not. He reviewed all the cases in finding the ambiguity under the insured versus insured provision. This is a question of law, though, right? Yes, it is. So even though David Riley is a brilliant jurist, he doesn't get more of a break than that other than saying he's a really smart guy. It's a de novo review. Understood. Understood. And I would point out, if we look at Section 541, Section 541 gives the bankruptcy estate all kinds of interest in property. It's not just so he has the same interest in property here that any tortfeasor or tort victim has to an insurance policy by the alleged tortfeasor. So if I have a claim against someone else for running me down and there's a coverage dispute between the person who runs me down and their insurer, I have an interest in that. I can intervene in that action. And if, in fact, there is a coverage dispute in that case, I am a necessary party as the alleged tort victim. So when we sued for coverage in this declaratory judgment action, we were required to and, in fact, did join the trustee because the trustee is a necessary party. There was no objection to that by executive risk in the trial court. And, in fact, the trustee filed pleadings stating that he believed that we were entitled to coverage and that he is entitled to coverage and that the two exclusions did not apply. Now, I note that because in a variety of pages that they cite in their reply brief, there's about 10 different pages on page 4, 6, 7, 9, 11, 14, and 19. Of the reply brief alone, they claim that the trustee has not claimed the policy. And that's just not true. We have asserted, we have attached to our appellate brief the trustee's pleading in which he says that the two exclusions do not apply. He is claiming coverage under the policy and he believes, yes, now, he's entitled to defense costs under the policy. So we have the trustee as a party. And so when opposing counsel says that Section 541 does not give us any right to pursue the argument that Section 541 negates the bankruptcy exclusion clause, he overlooks, as he must, the fact that the trustee is a necessary party to this case, would be bound by the common rules of res judicata if there's an adverse determination here. And we have what is, in effect, a co-ownership or co-interest in that insurance policy, the trustee as a tort victim and us as insurers under the same policy. There's no rule of bankruptcy law or Illinois law that permits a policy to be divided between a trustee and an insured. They may have different interests with respect to defense costs, but they have the same interest in the indemnification portion of the coverage, and that's what we've sued for here. Now, I would also point out that one of the cases that they cited, which is found at tab 17 of their book of cases, which is the Liberty Mutual case, they claim that that states that there is no case in which Section 541 has been used or asserted by someone who is not a debtor under the bankruptcy code. And that's just not true. The case itself cites NRA Auto International Refrigeration, 275 bankruptcy at 811. It has a lengthy quote from that opinion there. And that's a case in which the trustee was trying to claim under the usury laws that a financial institution had charged too much interest because of an acceleration of a financial instrument debt. So the trustee wanted to use the financial institution's claim to claim usury, which you would get triple damages. But the financial institution asserted that Section 541 made their purported acceleration of the debt invalid, and it called that a defense. Now, in this case, in the Liberty Mutual case, they did criticize the prior court for calling it a defense. But it never said that this case was wrongly decided. It said it used an unfortunate term by defense. And it never overruled that prior case's decision, which said, in effect, that a non-debtor could, in fact, assert Section 541 to invalidate the financial claim on the loan. And I would further point out that that case was reviewed on appeal in something that wasn't cited in any of the parties' briefs. And the site for the appeal is found at 417F 3rd, 193. And there, the case said in part, quote, The parties choose to talk of the matter as if it is a question of standing, namely, who is entitled to invoke, in that case it was Section 365, similar to 541. We do not so view the problem or say that a third party can never rely on the section. Rather, our holding here rests on the proposition that the district court adjudicated in this case only a contract claim, Liberty against Greenwich. So the case, the primary case that they relied on here and in their briefs, cited another case which showed that non-debtors can assert Section 541. And in a case unlike this one, which did not involve a co-ownership or a co-interest, an undivided co-interest in a policy, but just involved strangers. So I don't think that it's a good argument to say that we lack standing to assert that Section 541 applies to bar this action. They don't dispute that it bars this clause. It outlaws this clause. They can't dispute that the trustee is a party. They can't dispute that the trustee has asserted these exclusions as well and are right to them. And so we have basically a non-issue in my view. We are allowed to assert Section 541. We are allowed to claim our interest in the policies. We are allowed our defense costs and our indemnity interest. Now, there is also a discussion of policy versus proceeds, and I think maybe I wasn't as clear as I intended to be in my brief. When I was discussing policy and proceeds, I was basically asserting the breadth of Section 541 and the breadth of the interest that the bankruptcy trustee holds under the Bankruptcy Code. They hold every kind of interest in policy and property and leases and debts and claims and you name it. There are no proceeds yet that the trustee would be entitled to because he hasn't proved his case against Dr. Yesenow or anyone else. So he'd have to prove his case before he'd be entitled to indemnification proceeds. We aren't entitled to proceeds either because we don't have a binding final decision saying that we're entitled to a defense and they've refused to provide us one. Once that issue is decided, assuming we get a defense, then we will have an interest in the proceeds of the policy for purposes of asserting our defense. The trustee has no objection to that. If we're found liable under the underlying action, we'd also have an interest in the policy proceeds to indemnify us in the event the trustee proves the claim. And there the trustee's interest and our interest are exactly aligned. We are at loggerheads with respect to the underlying case, but we both agree as it's in both our interests to agree that the indemnification parts of this policy apply. So with respect to – so when opposing counsel argues that there's no claim by the debtor, that's just wrong. That's just wrong. And we've attached the pleading that the debtor provided to our case. Now, under Section 365, they claim that this is not an executory contract. If it is an executory contract, then there's a similar anti-if-so-facto clause that applies to outlaw this provision. And they have cited several cases in which, under Section 365, the federal courts, bankruptcy courts, have permitted the assignment of policies. In I believe every case in that circumstance, the policy period was over before the bankruptcy was commenced. And so the law has always been that even if an insurance policy contains an anti-assignment clause, if the policy period is over with and a claim was made, you can assign the policy. If it's an executory contract, they could argue that it can't be assigned to a liquidating trustee or whatever. So the courts in those cases, complying with the Bankruptcy Code and the purposes of the Bankruptcy Code to permit the reorganization of these debtors, sometimes have said that the duties of cooperation and so forth are merely ministerial and don't affect the ability to assign the claim, assign the insurance policy to a liquidating trust for the benefit of claimants. That has nothing to do with the policy here. In each of those cases, the creditors, the insurance companies, oppose the Bankruptcy Code plan. And the creditors wanted the plan, and the trustee wanted the plan. In this case, too, we have the creditors represented by the trustee want this coverage, and we as claimants want the coverage. The only person who doesn't want the coverage is the insurance company. There's not a single case cited by them in which the effect of the policy was to diminish the potential recovery to the bankruptcy estate. And that's why the purpose of the Bankruptcy Code is so important, and the position of the trustee is so important, because the courts are empowered and required to maximize the bankrupt estate, maximize the creditor's remedy. And in this case, the only way to maximize the potential debtor's estate and maximize the creditor's remedy is to permit this coverage action to proceed and to outlaw the bankruptcy exclusion as required by the two sections of the Bankruptcy Code. And I would also point out that the case you specifically mentioned in argument this morning, Federal Mobile, in footnote 22, I believe, said that if the insured did not cooperate under the policy, then the insurance company would not have to pay the claim. Now, that's the definition of the executory contract under countrymen. That's what it is. If there's performance remaining to be done that would excuse your own performance, then it's executory. So even the Federal Mobile case itself said or held that if there was no cooperation, performance would be excused. And that's the very definition that countrymen uses of executory. I would also point out that they say in some cases that if the premium is paid ahead of time, it's not executory. But as the Fort Worth case that we cited held, it would be a strange law indeed if premiums remained to be paid and that permitted coverage, but if premiums were entirely paid, we would not permit coverage. So the Fort Worth case that holds that is part of the reason that we say that the policy is executory and we are entitled to outlaw this bankruptcy exclusion under Section 365 as well. Now, with respect to the insured versus insured exclusion, the cases that we have cited involved the appointment of a bankruptcy trustee. The cases that they cited involved debtors in possession, the same entity. I also point out that if you look at the policy, the policy would permit derivative shareholder claims against these same directors. So had the trustee abandoned the claim against Dr. Jessen Elwin Patel, a shareholder, a disaffected shareholder or an aggressive shareholder or predator could step into the shoes, bring the derivative claim and have the same lawsuit and have the coverage under the derivative claim. So functionally, what are we talking about? We have a diligent trustee who is pursuing all available remedies and we're saying under the policy that he would be denied the benefit of the insurance policy. Whereas a non-diligent trustee who abandoned the claims and let it go to a shareholder, that would provide coverage. It just doesn't make any public policy sense and it's not justified by the cases. Opposing counsel did acknowledge that collusion was the reason for the insured, the insured clause. We've cited academic authority to show that there is a recognized difference between a debtor in possession when the same entity is going to emerge from bankruptcy versus a trustee who is appointed according to the bankruptcy code provisions that require the trustee to be independent. And there's no dispute at all that this trustee and any trustee was never insured under the bankruptcy policy. Now, the Biltmore case was mentioned specifically by opposing counsel and extensively relied on by them. Biltmore was a debtor in possession case, as was the Surujohn, S-U-R-U-J-O-N case, which they also cited. In fact, in that case they said, this case does not concern a suit by a liquidator, a trustee, or a receiver. Rather, this action is a suit by a reorganized debtor. That's one of the cases they applied. In Biltmore, as I said, it was a debtor in possession. So that's the first point of distinction there, whereas here we had a trustee appointed. Second, the lawsuit in Biltmore was instigated by the old management. For goodness sakes, Dr. Yesenow would be extremely delighted if the trustee would stop this lawsuit. He wants to defend himself, but he would drop this claim for defense in a heartbeat if the trustee would stop the lawsuit. But third, and perhaps most importantly, Biltmore, it recognized the distinction between debtor in possession and trustee. It overruled a prior case from its own circuit in which a debtor in possession was allowed to escape the insured versus insured exclusion, overruled the case, Pantel, I believe it was. But it cited favorably unified grocers, a Ninth Circuit case from 2006, which didn't enforce the insured versus insured exclusion as to a trustee. It was aware of both cases. It overruled the debtor in possession case. It didn't overrule the unified grocers case. So we can't say that on appeal there is no support for not having the insured versus insured exclusion applied to bankruptcy trustees. And I would also point out, without belaboring it, all the FISLIC cases in which a similar regulatory exclusion was applied and never applied to a federal regulator who was appointed to reorganize the affairs of a bank. So we have, and we've cited, you know, a bunch of cases that say that a trustee is not the same as an insured, that there's no reason to enforce the insured versus insured exclusion against a bankruptcy trustee or a federal regulator. There's just a ton of cases saying that. Now, finally, I think whether, you know, whether or not this is de novo review and whether or not Judge Riley is a credible jurist or not, I mean, obviously, I think he was, and I think he wrote a good opinion. But they've taken a shot at him by saying that, well, he just said there's conflicting cases, and therefore there's an ambiguity, and therefore I'm washing my hands of this and holding for the insured. That's not what he did. He said in his opinion that he reviewed those cases. And I would also point out that in the case that they cite, the primary case that they cite, Arrow Corporation versus American International Specialty Lines Insurance Company, it's tab number one in the book of cases that they provided, says in part, quote, and this was not quoted in their brief, a significant division between courts over the interpretation of identical language can itself be some evidence of ambiguity. And then it cites an Indiana case on it. So I don't think anybody went overboard in saying that we have half a dozen or a dozen cases that say the insured versus insured exclusion does not apply to a bankruptcy trustee or a federal regulator, that those opinions are all bad. They're all crazy. They're all nonsense. And we don't even get an ambiguity? It's not even some evidence of an ambiguity? I think it clearly is. And I think he was justified in so holding and he was justified in providing that this exclusion did not apply to the trustee or to Dr. Yesenel's claim for defense costs. I think I've exceeded my time, so I apologize for that. Thank you. But thank you very much. Briefly, Mr. Kalyanis. I would just like to address a couple points raised by opposing counsel, Your Honor. As to the application of the Bankruptcy Code provisions and their interest here in terms of how they should affect the policy, the Bankruptcy Code's purpose is to protect the bankruptcy estate. It is not to protect non-debtors such as plaintiffs Dr. Yesenel and Patel. Counsel makes the argument that we are simply wrong to say there's been no claim by the debtor, the estate in this case, under the policy. Plaintiffs attached a single pleading by the bankruptcy, by Mr. Abrams to their brief, which is captioned, The Defendant Abrams' Response to Plaintiff's Motion for a Temporary Restraining Order. I won't read into record the three-page pleading, Your Honors, but there's no evidence in there of Mr. Abrams making a claim under the policy. He supports the proposition that the exclusion should not apply to the claims he's bringing against Dr. Yesenel and Patel, but I'm not surprised by that, that he would want there to be coverage for the claims he's bringing against Dr. Yesenel and Patel. And as to another Bankruptcy Code issue, Your Honors, the issue of whether this is an executory contract or not with respect to the application of Section 365 of the Bankruptcy Code, I pointed out originally that there's been no case to hold that an insurance policy like the one at issue here has been held to be an executory contract. The case pointed to by plaintiffs, the Fort Worth case out of the Bankruptcy Court in the Northern District of Texas, questioned whether it was an executory contract, specifically acknowledged that they were not finding one way or the other whether it was an executory contract, but specifically noted there's a substantial body of case law that supports the insurer's position that, regardless of the obligation, such as those in the policies, an insurance policy is not an executory contract if premiums have been fully paid. The premiums in this case were fully paid prior to the commencement of the bankruptcy proceedings, and therefore this policy is not an executory contract and Section 365 does not apply. With respect to the second exclusion, the insured versus the insured exclusion, I reminded the question Justice Quinn asked about what the purpose or intent of the exclusion was. And while I acknowledge arguments have been made that there's some collusiveness in terms of preventing collusiveness, there's nothing on the face of the exclusion to suggest that's required. But let's look at the facts of this case. Well, I got that from Biltmore. Biltmore went out to great lengths about collusiveness, and that's why you need to have this exclusion. That's right, Your Honor. But I think the argument of opposing counsel now begs the question of the great interest in both the estate and plaintiffs here having access to this policy. The claims of financial mismanagement and breach of fiduciary duty wouldn't otherwise be covered, say for the instance in the Biltmore case, if this was pursued by the company beforehand. There is an exception to the exclusion for shareholder derivative claims, as counsel points out, but that's not what this case is close to. This case is close to if the company itself prior to bankruptcy, like in Biltmore, had pursued claims against their directors and officers, not in a derivative capacity, but the company itself, there would be no coverage under the policy. And to the same extent, the fact that Mr. Abrams is a liquidating trustee and court-appointed manager of the debtor, that company, the exclusion should apply with equal force to preclude coverage for his claims against these doctors as well. Can you distinguish the FSLIC cases? I can, Your Honor, only because like the cases that plaintiffs cite to distinguish the cases like Biltmore and the 8th and 11th Circuit, or at least the district court cases that support executive risk interpretation of the insurer versus insured exclusion, the FSLIC cases and the Unified Grocers case and the Cox Communication case cited by plaintiffs don't deal with this identical exclusion. The cases executive risk cite essentially deal with the identical exclusion. If anything, the executive risk exclusion is broader by its preparatory language as compared to some of those other cases. For instance, as pointed out in executive risk reply brief at 18, Unified Grocers case dealt with an outside position exclusion. Cox Communication case dealt with an outside entity exclusion. While those courts did address in what fashion the debtor in possession acted, they weren't dealing with the insurer versus insured exclusion, and I think that really becomes evident. Otherwise, how would the Biltmore case justify its conclusion if it wanted to be coexistent and not overrule the Unified Grocers case? It specifically overruled two other cases in the 9th Circuit at the district court level saying we disagree with those cases and they are therefore overruled. It let the Unified Grocers case stand because it acknowledged or recognized that it dealt with an exclusion different than the insurer versus insured exclusion. Again, I go back to the point, Your Honors, that the exclusion on its face applies to bar coverage. There is no ambiguity here. Even if the trial court did not intend to apply some automatic ambiguity test, the executive risk suggests the ruling implicates at least by referring to the unselling nature of the law. Apart from that, the unambiguous language of the exclusion precludes coverage for the Abrams 1 action. Thank you. Thank you for the arguments, gentlemen. The briefs. This case will be taken under advisement. This court will be adjourned.